### RAYMOND v. RING.

(Supreme Court, Appellate Division, Second Department.  April 24, 1908.)

On reargument.  Affirmed.
See 108 N. Y. Supp. 1145.
Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Arthur M. Johnson, for appellant.
William L. Snyder, for respondent.

PER CURIAM.  Judgment and order affirmed on reargument, with costs.  All concur, except GAYNOR, J., who reads for reversal, with whom RICH, J., concurs.

GAYNOR, J. (dissenting).  This action is for slander by a woman against a woman.  The plaintiff says she is a seamstress.  The verdict was $8,000.  The claim is that the defendant called the plaintiff a whore. No defence was pleaded, but only a partial defence in mitigation, i. e., that the defendant had been told of things about the plaintiff and believed them.  After reading the evidence it is not easy to help feeling that the verdict is excessive, and oppressive.  There is evidence that the plaintiff was frequently seen coming out of the Mt. Vernon theater when it was not in use, and downstairs from Patrick J. Ring's room therein where he lived and slept alone.  He had charge of the theater. Since the alleged slander he has married the defendant, but he is now on bad terms with her.  On the plaintiff's own story, also, she went of an evening to New York City with a married woman in whose house she worked, and they met two men at the railroad station, strangers to the plaintiff, and were taken by them in a hack to a very expensive café where they had a wine dinner, the plaintiff drinking wine with them until, as she says, she was dizzy.  They then separated, the married woman going with one of the men, where not being disclosed, and the plaintiff with the other to a hotel, where the man with her registered himself and her as husband and wife, and had a bedroom assigned to them.  The plaintiff says she did not go upstairs, and the man corroborates her.  But her evidence shows a knowingness that no innocent girl could exhibit.  Ring and this man afterwards had a fight over her.  Their versions differ but the fact is ugly.  Ring objected to his going with her.  If Ring did not have her why did he upbraid and fight with the man for taking her to New York?  The husband, now in hostility to his wife, she having a suit against him to set aside a conveyance, says that she told him she hired one of the men to put the plaintiff in the compromising position in New York.  His testimony is of a doubtful character, to say the least.  The case is an

unpleasant one, and the plaintiff could hardly have clean skirts and get into it.

The plaintiff was in no hurry to vindicate herself. The alleged slander was on June 28, 1904. This action was not brought until May 18, 1905, and the day after the slander the plaintiff had her lawyer write to the defendant threatening a suit for a battery, not for a slander.

In respect of the experience of the plaintiff in New York City, stated in the foregoing, the learned trial judge charged the jury that:

"Before you find that as a circumstance in favor of this defendant you must find either that she (the plaintiff) did some wrong, or that the defendant heard that she did and honestly believed it."

The exception to this limitation was good. The plaintiff may not have committed the "wrong," i. e., the act of sexual intercourse, to which the learned judge limited the jury, and yet the facts that she went to the dinner with strange men not of her social kind, and got the worse of liquor with them, and separated from her woman companion and one of her male companions, and went alone with the other male a considerable distance to and into a hotel, and was there registered by him as his wife, were to be considered by the jury on the question of damages, at least, although they were quite persuaded that the plaintiff did not do the final "wrong" meant by the judge and understood by the jury.

The judgment should be reversed.

RICH, J., concurs.